

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-08-00117-CV
_____

WALKER & ASSOCIATES SURVEYING, INC., Appellant

V.

REBECCA AUSTIN D/B/A
AUSTIN SURVEYING AND MAPPING, Appellee

On Appeal from the 123rd Judicial District Court
Panola County, Texas
Trial Court No. 2005-412

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

## I. Factual and Procedural History

Austin Surveying and Mapping (Austin) hired three work crews, on an hourly basis, from Walker & Associates Surveying, Inc., for the purpose of doing the field work resurveying properties on which Austin had won bids. No written contract was made, and whatever agreement was reached was based solely on verbal discussion.

Austin declined to pay approximately the last $48,000.00 billed by Walker for the work of its crews. Walker filed suit against Rebecca Austin, d/b/a Austin Surveying and Mapping, to recover. Austin alleged as a defense that the work was not competently done and that Walker was thus due nothing. Walker alleged that it agreed to provide survey personnel and laborers, to be supervised solely by Austin and its management, and Walker gave Austin a reduced rate price for that reason.

Austin then filed a counterclaim seeking to recover the $55,000.00 that it claimed to have expended in redoing the work of one team and reworking portions of the work from the other two teams. The case was tried to the court as a suit on sworn account based on an oral agreement.

The trial court's judgment awarded nothing to Walker, but awarded Austin a recovery of $6,094.24, plus $10,035.00 in attorney's fees. The $6,094.24 figure is the difference between the amount the trial court found that Walker had billed Austin for its work and the cost to Austin for redoing that work. The court entered findings of fact and conclusions of law.

2

## II.  Issues Raised on Appeal

Walker first contends the evidence is neither legally nor factually sufficient to support the judgment in favor of Austin. That issue concerns the terms of the contract, the quality of the work performed by the Walker crews, and alleged inadequate supervision by Austin.

In his next point, Walker argues that no breach of contract occurred, as a matter of law, because there was no evidence that Walker agreed to provide competent crews.

Finally, Walker argues that the court erred in the damage calculation and that the court erred by failing to award attorney's fees, because Walker also prevailed in his claim.[1]

We first address the sufficiency of the evidence to support the judgment in favor of Austin on its defensive theory.

## III.  Legal and Factual Sufficiency

### A.  Terms of the Oral Agreement

The terms of an oral contract must be clear, certain, and definite. *Gannon v. Baker*, 830 S.W.2d 706, 709 (Tex. App.—Houston [1st Dist.] 1992, writ denied). A lack of definiteness in an agreement may concern the time of performance, the price to be paid, the work to be done, the service to be rendered, or the property to be transferred. *Id.*; *see also Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 324 (5th Cir. 2006). "The rules regarding indefiniteness of material terms of a

---

[1]Walker also argues that if the court found a violation of the Deceptive Trade Practices Act (DTPA), that claim fails as a matter of law, because there is no proof of representation by Walker that his crews were competent. Austin agrees the trial court made no finding concerning the DTPA. That is not an issue on appeal.

3

contract are based on the concept that a party cannot accept an offer so as to form a contract unless the terms of that contract are reasonably certain." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000). "Although Texas courts favor validating contracts, we may not create a contract where none exists." *Knowles v. Wright*, 288 S.W.3d 136 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (quoting *Lamajak v. Frazin*, 230 S.W.3d 786, 793 (Tex. App.—Dallas 2007, no pet.)).

Walker argues that there was little or no agreement reached about the level of competence of the workers provided. Both parties use, in an effort to specify the level of competence required, language asking whether the judgment supports a finding that the work was not done in a skillful and workmanlike manner, and then Walker further argues that the skillful/workmanlike manner concept is not a concept synonymous with that actually used by the court, which found the parties

> made an oral agreement for . . . WALKER to provide on the ground survey crews to produce competent work for retracement boundary surveys . . . . The information provided . . . could not be used . . . to complete the finished surveys because of incompleteness, inaccurancey [sic], and errors.

Although currently found in the DTPA, the terminology used in counsels' arguments long predates the statute. The skillful/workmanlike combination appears in scattered contract cases stretching as far back as 1903.[2]

---

[2] *Tex. Gulf Coast Land & Oil Co. v. Galveston-Chicago Well Boring & Drilling Co.*, 34 Tex. Civ. App. 33, 77 S.W. 974, 975 (Galveston 1903, writ ref'd).

4

Walker argues that because the parties did not discuss the level or standard of work to be performed, there is "an implied warranty" that the services will be performed in a "skillful and workmanlike manner." The implied warranty of good and workmanlike manner provides that a service will be performed in a skillful and workmanlike manner. *See Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987). A good and workmanlike manner is "that quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work." *Id.*

The trial court found that the agreement required Walker to provide "on the ground survey crews to produce competent work . . . ." The trial court further concluded that the work "was not competent work." Walker argues that this conclusion has no support in the evidence.

It appears the trial court was using the term "competent" as the equivalent to the term "good and workmanlike." As the court did not find the work to be "good and workmanlike" or "skillful and workmanlike," that terminology is merely a way of explaining what type of work would be considered competent. There has never been any suggestion, either at trial, by motion for new trial, or any other method, that a determination of whether the work was not competent is an inappropriate measure to be applied—that the standard would not support a judgment, or that it was an improper definition under the breach of contract alleged.[3] Thus, we review the case to determine whether the

---

[3]In jury trials, the sufficiency of the evidence must be reviewed using the definitions and instructions contained in an unobjected-to jury charge. *Soto v. Seven Seventeen HBE Corp.*, 52

judgment and findings made by the court are supported by the evidence. Read in light of the requirements set out above, is there evidence that would allow the court to determine that Walker agreed to supply Austin with qualified and competent survey crews? There is evidence that

• Walker would provide crews, at a rate of $69.00 per hour; Don Austin would be the supervising professional registered land surveyor.

• Rebecca Austin expected (based on conversation with Mr. Walker) the crews would be competent and able to do the work without constant supervision by Austin.

• The crew, in general, should be an extension of the surveyor and able to provide labor, cut lines, look for evidence of property lines, and do whatever the job may require.

• Walker testified in response to a question asking if he was to provide survey crews that could produce the work—that he provided survey crews that could produce the work, which was to be competent.

It is implicit that for a crew to produce "good and workmanlike" results in this field, they must have a certain level of training, experience, and competence. One would not expect an untrained day laborer to be equipped to provide skillful services. There is some evidence that Austin expected the teams to be competent and capable of doing quality work without constant, direct supervision. There is nothing conclusive to the contrary. Counsel has directed us to no such

S.W.3d 201, 204 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex. 1985); *Allen v. Am. Nat'l Ins. Co.*, 380 S.W.2d 604, 609 (Tex. 1964)).

evidence. In fact, Walker himself testified that his crews were competent, that they had been doing such work for him, that they had performed the services and collected the data properly, and that he had no problem with them.

Thus, we conclude there is sufficient evidence to allow the court to determine that the agreement involved the provision of good and workmanlike or competent crews. Further, even if the parties do not agree on a specific standard, the implied warranty of good workmanship serves as a "gap-filler" or "default warranty"; it applies unless and until the parties express a contrary intention. *Centex Homes v. Buecher*, 95 S.W.3d 266, 273 (Tex. 2002).

## B.    Quality of the Work Performed

The remaining question is whether there is sufficient evidence that the teams actually failed to perform their tasks competently. A summary of the evidence of work poorly done by the Cooper team (and redone by Austin) follows:

Cooper's team: (8 jobs for Austin)

*Dial*
- cut a search line at 6 degrees off the correct angle and ended up 250 feet north of the correct northwest corner of the tract. To do so, he
- took a line down a logging road, rather than cutting through brush to get a correct line

*Vice*
- ran only a part of a western boundary line, then cut back across the property using a pipeline right-of-way, rather than cutting brush to match the correct line
- failed to find right-of way monuments that were not protruding out of the ground, despite having a Texas DOT plan sheet for a farm-to-market road

*Wilson Estate*
- did not complete data collection for the survey

*Garner Estate*
- ignored east boundary line
- performed general creek meander inadequately by having a 200- to 300-foot gap between shots
- did not meander a small branch of the creek correctly by getting no shots of the creek
- Despite aerial photograph showing, and verbal directions from Austin, reported that could not find an old fence line—which Austin later did

*McPherson*
- crew did not find sufficient traverse points, and got no center line shots while traversing a county road (which is SOP) [Rebecca Austin returned with the Cooper crew to obtain those shots]

*Gross & James* (copy of previous survey, copy of City plat and deed sketches)
- failed to traverse far enough south to locate south boundary line
- failed to locate evidence of old fence line on that boundary, or
- failed to locate evidence with significance in locating the boundary line (despite being shown on the old survey)

*Bagley Estate* (Texas) (with aerial photograph and working sketches)
- failed to traverse the west boundary line
- failed to locate the NW and SW corners
- failed to traverse part of northern boundary
- failed to locate any of the residences on the county road
- (when the Austin crew went back, they found a concrete monument at the SW corner, marked by red painted trees, a fence and red painted line on west boundary, and iron rod at NW corner)
- left 400- to 500-foot gap between shots on creek on south side
- traversed across a pasture, when the proper traverse would have been through heavy brush and swamp

*Bagley Estate (Louisiana)*
- chose traverse line avoiding brush and trees
- took extremely long side shots from main points, i.e., 1,300 feet (resulting in an 8-foot difference when reshot later)
- ignored two quarter section corners marked by fence corners

*Reed* (provided with working sketches, aerial photographs, copies of property maps)
- failed to locate any evidence of a west boundary line or SW corner
- ran traverse down lease road and failed to get any center line shots (Austin found old fence line down most of west boundary, and a very large iron monument with witness tree)

This is both legally and factually sufficient evidence to support the trial court's findings. Walker does not direct us to evidence that these errors did not occur—either by this team or the other two teams. He instead argues that the teams should not have been expected to perform such work without the direct supervision of a licensed surveyor, thus suggesting that the true negligence was that of Austin by not more closely supervising his workers.

In support of that position, he directs us to Walker's testimony that in his business, he had people overseeing the crews and Judy Key's (the bookkeeper) testimony that she had heard no complaints about the quality of their work. He also emphasizes again that Austin had expressly rejected his offer to supervise the work for an additional fee. These are legitimate arguments, but the trial court, as the finder of fact, was presented with this evidence and arguments and resolved the issue in favor of Austin. Ultimately, the question the trial court had to resolve was whether the work crews performed in a skillful manner. We find there is evidence to support the trial court's determinations.

Walker also argues that the standards used to measure their work are inappropriate and are standards that should be used only for professional surveyors. The question decided by the court was first, what they agreed to, and second, whether those standards were met. In the absence of any written agreement, the trial evidence is necessarily the only source of any express agreement. There is evidence that Walker represented the crews as competent, that the agreement was for competent workers to be provided, and that Walker failed to provide the required quality of work.

In a related argument, Walker contends that the standard used by the trial court was for a competent surveyor, not for a competent surveying team. Again, the problem is that because this is an oral agreement, the question initially before the court was what that agreement consisted of—and the parties can obviously contract as they see fit.

The standards to be applied to this evidence are well established. Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).[4]

---

[4]In determining Walker's legal sufficiency issue, we have been directed to analyze "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we credit favorable evidence if a reasonable fact-finder could, and disregard contrary evidence unless

Walker argues that the finding of fact that it had agreed to provide survey crews to produce competent work for boundary retracement surveys is not supported by the evidence. Walker states that the evidence does not indicate that they discussed or agreed on the level or standard of work to be performed by the crews and that Austin had expressly rejected Walker's offer to supervise the work for an additional fee. He argues that although the evidence may show that Austin *expected* a particular level of competence, it does not show that they *agreed* to such.

In a nutshell, Walker argues: it was our job to supply a crew. It was Austin's job to supervise them and make sure the work they did was up to the standard desired. Thus, Walker argues, the evidence that the crews were not properly supervised requires our determination that no evidence supports the verdict. Walker also argues that Austin was at fault by not routinely reviewing the data produced by the crews and that no complaint was made until months later.

Thus, Walker posits, the court's conclusions that the contract required the crews to produce competent work—or alternatively that the work produced by the crews was not competent—are unsupportable as being based on speculation and conjecture.

---

a reasonable fact-finder could not. *Id.* So long as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the fact-finder. *Id.* at 822. The trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Id.* at 819. Although we consider the evidence in a light most favorable to the challenged findings, indulging every reasonable inference that supports them, we may not disregard evidence that allows only one inference. *Id.* at 822.

Using the traditional language, in our factual sufficiency review, we consider and weigh all the evidence, and will set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

11

At most, the evidence is in conflict. The trial court had evidence from which it could decide that the work was of poor quality and whether it resulted from improper workmanship by the crew or inadequate supervision from Austin. This Court is not a fact-finder and may not pass on the credibility of the witnesses or substitute its judgment for that of the trier of fact. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998); *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744 (Tex. 1986) (findings of fact are exclusive province of jury or trial court). It is not within the province of this Court to interfere with the fact-finder's resolution of conflicts in the evidence, or to pass on the weight or credibility of the witnesses' testimony. *Sw. Airlines Co. v. Jaeger*, 867 S.W.2d 824, 830–31 (Tex. App.—El Paso 1993, writ denied). Where there is conflicting evidence, the fact-finder's verdict on such matters is generally regarded as conclusive. *Edmunds v. Sanders*, 2 S.W.3d 697, 703 (Tex. App.— El Paso 1999, pet. denied); *see Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex. 1986).

Under these facts, we find the evidence both factually and legally sufficient to support the verdict.

## IV.     Breach of Contract Fails as a Matter of Law?

Walker separately also argues that the trial court could not interpret the contract as one requiring Walker "to provide ground survey crews to provide competent work for retracement boundary surveys to save time and labor" for Austin. Walker contends that there is no evidence to

12

allow such a finding and that to construe the parties' agreement as including such a covenant incorrectly interprets the contract as a matter of law.

The evidence supporting a conclusion that their oral agreement required such work is set out above, and we likewise find it sufficient in this context.

## V.     Damages—What Is Proper and How Much?

We have so far concluded that the evidence supported the court's finding that because of breach, Austin was relieved from performing by payment.  At this point, we consider Austin's recovery under its counterclaim.  Austin sought to recover because it was required to redo the work previously done by Walker.  Austin formulated the claim as seeking damages based on Walker's failure to meet the terms of its contract.

The argument under this section that reaches into the realm of the propriety of this type of damages is found in two paragraphs.  In that segment, reproduced in full below, Walker argues that

> Additionally, the contract alleged by Austin to exist provides no basis for an affirmative recovery by Austin on the evidence presented.  Had Walker failed to provide services as contracted, Austin would have a defense to claim for payment.  Yet, Austin prevailed not only in completely offsetting the amount owed Walker, but also in a judgment in its favor against Walker.
>
> Austin's contention, seemingly adopted by the trial court is that Walker, by breaching a contract to provide survey crews for the rate of $69 per hour plus mileage, has caused Austin $55,532.38 in damages, offset by the $49,438.14 owed Walker.  Yet the trial court did so with no evidence that it cost Austin any more than the $69 per hour plus mileage agreed as Walker's price.  Moreover, Austin did not differentiate between completing work left incomplete by Walker's crews, correcting work allegedly performed incorrectly, and duplicating work properly done.  As to incomplete work, Austin has not been damaged at all.  If additional work was required, Austin would have incurred a cost for that work, whether with Walker or

13

someone else. Since Walker was to be paid on an hourly basis, had more work been required of Walker's crews, the balance owed Walker by Austin would simply have been greater. No basis exists for charging Walker with any amount other than for work done incorrectly. Since Austin failed to segregate his claimed damages, the evidence is legally and factually insufficient to support the trial court's findings.

The findings made by the court sound in contract, not in tort. There are no findings concerning negligence or fraudulent inducement, or simple fraud. They are directed solely at a recovery based on contract, and then an award of attorney's fees that can only be justified based on a contract recovery. Accordingly, we limit our review to the propriety of damages based on breach of contract.

Specifically, Austin alleged that as a result of Walker's failure to perform, Austin was "caused to suffer losses and damages in excess of the agreed amount of the services." There is no evidence to support a critical part of this allegation: "damages in excess of the agreed amount of the services." As we have previously stated, there is evidence of the amount that Walker billed, and of the amount that Austin ultimately paid to redo the work done by Walker. What there is not—is evidence that Walker had agreed to do a particular job for a particular fee.[5] This is not a situation where a turn-key job is done, and billed for, but then has to be redone, with damages caused by delay, or by changed circumstances. *See Ybarra v. Saldana*, 624 S.W.2d 948, 952 (Tex. App.—San

---

[5]*Cf. Goffney v. Rabson*, 56 S.W.3d 186 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (case involving attorney's fees, and allowing Rabson to recover for hourly fees billed by her new attorney). In that case, however, her former attorney (who had agreed to contingent fees) had withdrawn on the day of trial and the party had to hire another firm on an hourly basis to represent her. Rabson recovered damages as measured by the entire amount of the hourly fee charged to her.

14

Antonio 1981, no writ); *McKnight v. Renfro*, 371 S.W.2d 740, 745 (Tex. Civ. App.—Dallas 1963,

writ ref'd n. r. e.) (when an owner, on failure of contractor to perform takes over job and completes

work himself or herself, owner may recover from contractor excess of reasonable and necessary cost

of completion over and above unpaid portion of contract price).

The Texas Supreme Court has recognized that economic loss may be either direct or

consequential and summarized the distinction as follows:

> Direct economic loss may be said to encompass damage based on insufficient
> product value; thus, direct economic loss may be "out of pocket" the difference in
> value between what is given and received or "loss of bargain" the difference between
> the value of what is received and its value as represented. Direct economic loss also
> may be measured by costs of replacement and repair. Consequential economic loss
> includes all indirect loss, such as loss of profits resulting from inability to make use
> of the defective product.

*Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 78 n.1 (Tex. 1977).

In cases involving such things as sales of materials or items to one party with expected resale

of those items to another, courts recognize that a potential but lost profit may be recoverable as

damages—and that this becomes more enforceable as the ability to concretely measure those

damages improves. *See Retama Manor Nursing Ctrs., Inc. v. Cole*, 582 S.W.2d 196, 202 (Tex. Civ.

App.—Corpus Christi 1979, writ ref'd n.r.e.). In such a situation, a fact-finder may measure lost

profits by the difference between the contract price and what it would have cost the contractor to

perform the contract in accordance with the plans and specifications. *Deal Dev. Co. v. Amarillo

Concrete Contractors*, 554 S.W.2d 294, 296 (Tex. Civ. App.—Waco 1977, no writ); *Farris v. Smith*

*Erectors, Inc.*, 516 S.W.2d 281, 283–84 (Tex. Civ. App.—Houston [1st Dist.] 1974, no writ); *Carras v. Birge*, 211 S.W.2d 998, 1003 (Tex. Civ. App.—Dallas 1948, writ ref'd n. r. e.).

In this case, no such concrete measurement is possible, because as created, the oral agreement was not for the completion of jobs, or for the provision of specified completed surveys. The agreement was merely for provision of crews on an hourly basis—not for a completed transaction that could be measured.

In the findings of fact, the trial court found that services provided by Walker "was not competent work" and Austin "received no value" for counter-defendant Walker's "incompetent work." Having found Walker breached material terms of its contract, the proper remedy in this instance was to relieve Austin of payment for the substandard services provided. Austin argues that it is entitled to the benefit of the bargain. The typical statement of the benefit-of-the-bargain measure is that it represents the difference between the value expected from the contract and the value actually received by the nonbreaching party. *Arthur Andersen Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997). Many times parties contract for a specific project to be completed for a specified price, so the value expected is a completed project for the stated price. Here, Austin did not contract with Walker to complete a project for a stated price, but the contract was to pay Walker $69.00 per hour for the services provided. The value of the Walker work was not quantified as being worth a specific amount as is done when a particular job is expected for a set price. Consequently, there is no evidence, expressed in specific figures, of the value Austin expected to receive from the

16

hourly work done by the Walker workers. Instead of comparing the value expected from the contract with the value actually received, here, the trial court compared the unpaid amount charged by Walker for its services (which the court found was without any value) with the amount Austin spent to have other survey crews complete the work and granted Austin a judgment for the difference.

Another possible contractual measure of damages is the reasonable costs necessary to repair or restore the subject of the contract to its expected or bargained-for condition. *See D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex. 1998). The evidence showed that Austin spent $55,000.00 to survey the project. Clearly, Austin was required to expend a sizeable amount to complete this job, whether done by Walker workers or others. Comparing what Austin spent on the resurvey to the amount of unpaid billing by Walker does not establish reasonable costs to "repair or restore the subject of the contract to its expected or bargained for condition." Since Walker never bargained to supply a particular product for a designated amount which could be compared to the amount spent to "repair or restore" the project, this measure of damages is inapplicable.

We do not believe the fact that Walker billed $49,000.00 for hourly services, which Austin did not pay, and is now relieved of paying, establishes a loss to Austin. These facts and findings of the trial court excuse Austin from payment, but do not establish the requisites for an independent recovery from Walker. (If one party to a contract commits a material breach, the other party is discharged or excused from further performance [*Mustang Pipeline Co. v. Driver Pipeline* Co., 134 S.W.3d 195, 196 (Tex. 2004)].)

17

We conclude that because of the nature of the agreement, and of the type of work performed, the damages sought by Austin are not available under these facts. As pled and tried, there is no evidence of harm to Austin other than the failure to complete the work properly. There was no pleading or proof of collateral injuries, or indirect damage to Austin because of the poor execution by Walker's crews. Austin was in no worse position than it was before the contract was entered—Austin had to have the work done, either by providing those services by employees or contracting with others.

There is no recovery available, as a matter of law, under these facts.

Austin won its defensive claim against Walker. However, Chapter 38 does not provide for the recovery of attorney's fees by a defendant who only defends against a plaintiff's contract claim and presents no valid contract claim of its own. *Am. Airlines, Inc. v. Swest, Inc.*, 707 S.W.2d 545, 547 (Tex. 1986) (holding defendant could not recover attorney's fees under predecessor to Section 38.001 when defendant presents no valid contract claim of its own); *Energen Res. MAQ, Inc. v. Dalbosco*, 23 S.W.3d 551, 558 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

The judgment in this case does not reflect a recovery by Austin based on its own contract claim, but only an avoidance of a claim based on a winning defense. Accordingly, Austin is not entitled to recover attorney's fees in this instance.

18

We affirm the judgment of the trial court as to the take-nothing judgment in favor of Austin against Walker's contract claims. The judgment awarding Austin damages on its counterclaim is reversed, and we render a take-nothing judgment against Austin.

Jack Carter
Justice

Date Submitted:     August 5, 2009
Date Decided:      December 11, 2009