

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00014-CV
_____


IN THE ESTATE OF DAVID CHARLES LANDERS, DECEASED



On Appeal from the County Court at Law
Cass County, Texas
Trial Court No. CCL-09-P-0019



Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

The May 22, 2003, will of David Charles Landers stated "[a]t the time of the execution of this Will, I am not married and I have two children . . . . I also have a very close relationship with Frances Dale Lyles." Landers and Lyles were ceremonially married on August 23, 2003, after the will was executed. The trial court found that Landers was married by common law to Lyles as of July 12, 1993.[1] The will was construed based on the finding that a common-law marriage existed and, therefore, the property acquired during the marriage was community property. Landers' son, David Landers,[2] and daughter, Lisa McRorey, appeal this finding, arguing that the evidence was insufficient to support the finding of a common-law marriage. Because we find the evidence legally and factually sufficient, we affirm the court's judgment.

## I. Standard of Review

In conducting this legal sufficiency review, we view the evidence in a light most favorable to the judge's fact finding, and will indulge every reasonable inference that supports it to determine "whether the evidence at trial would enable [a] reasonable and fair-minded [judge] to reach the [finding] under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005); *Walker & Assoc. Surveying, Inc. v. Austin*, 301 S.W.3d 909, 916 n.4 (Tex.

---

[1] The Texas Family Code recognizes marriages without formalities. Included in such marriages are relationships which Texas law has classified as common-law marriages. TEX. FAM. CODE ANN. § 2.401(a)(2) (Vernon 2006). In this opinion, we will use the "common-law" marriage terminology.

[2] For clarity, David Charles Landers will be referred to as Landers, while his son, David Landers, will be referred to as David.

2

App.—Texarkana 2009, no pet.). We credit favorable evidence if a reasonable trial judge could, and disregard contrary evidence unless a reasonable judge could not. *Wilson*, 168 S.W.3d at 822, 827; *Austin*, 301 S.W.3d at 916 n.4.

In contrast, when conducting a factual sufficiency review, we consider all the evidence in the record, both supporting and conflicting, and will set aside the verdict only if it is so contrary to the overwhelming weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Walker*, 301 S.W.3d at 916 n.4 (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)). In an appeal from a bench trial, we do not invade the fact-finding role of the trial court, which alone determines the credibility of the witnesses, the weight to give their testimony, and whether to accept or reject all or any part of that testimony if the evidence falls within the zone of reasonable disagreement. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580–81 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

## II. Establishing Common-Law Marriage

The existence of a common-law marriage is a question of fact that the proponent of the marriage has the burden to prove through direct or circumstantial evidence. *Lewis v. Anderson*, 173 S.W.3d 556, 559 (Tex. App.—Dallas 2005, pet. denied) (citing *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993)). In Texas, common-law marriage exists where "the man and woman agreed to be married and after the agreement they lived together in this state as husband and wife

3

and there represented to others that they were married." TEX. FAM. CODE ANN. § 2.401(a)(2). In this case, Lyles had to prove: (1) there was an agreement between her and Landers to be married; (2) they cohabitated in Texas as husband and wife; and (3) represented to others that they were married. *Russell*, 865 S.W.2d at 932. Additionally, because the date of the common-law marriage is critical to the property division in this case (and the finding made by the court), there must be sufficient evidence to show that the relationship was established as of July 12, 1993. *See Winfield v. Renfro*, 821 S.W.2d 640, 646–48 (Tex. App.—Houston [1st Dist.] 1991, writ denied) ("A common law marriage does not exist until the concurrence of all three elements.").

## III. Sufficient Evidence Established Landers' Common-Law Marriage to Lyles

### A. Agreement to be Married

To establish an agreement to be married, "the evidence must show the parties intended to have a present, immediate, and permanent marital relationship and that they did in fact agree to be husband and wife." *Eris v. Phares*, 39 S.W.3d 708, 714 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). The testimony of one of the parties to the marriage constitutes direct evidence that the parties agreed to be married. *Id.*

Lyles and Landers both owned separate homes prior to 1993, the year in which they met. Lyles testified that she agreed with Landers to be informally married prior to their cohabitation on July 12, 1993, and that they celebrated this date as their marriage anniversary each year. Lyles'

4

testimony was direct evidence of an agreement to be married as of July 12, 1993. *See id.*; *In re Estate of Giessel*, 734 S.W.2d 27, 32 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).[3]

Conduct of the parties, evidence of cohabitation, and representations to others may constitute additional circumstantial evidence of an agreement, depending on the facts of the case. *See Russell*, 865 S.W.2d at 933; *Eris*, 39 S.W.3d at 714. Thus, even if evidence of an express agreement to marry was not offered, the trial judge could treat the facts discussed in the remainder of the opinion as circumstantial evidence of the agreement in order to find a tacit agreement to be married. *Russell*, 865 S.W.2d at 932.

## B.    Cohabitation

Lyles claimed Landers decided to enter into a ceremonial marriage "[b]ecause we had been together for ten years and he didn't want me left by myself without anything and I didn't want him left by his self without anything." In addition, Lyles stated that she lived with Landers from 1993 until his death. Landers' attorney, James Hurst, testified that he met the parties on November 4, 2002, and "verified that a common law marriage had occurred, at least that date or before."[4] He

---

[3]David and McRorey argue that because Lyles' testimony was not corroborated by other evidence, it was insufficient. They cite to the statement that "[i]f one of the parties is dead, the survivor will be required to meet the limitation imposed by Rule 601(b) of the Texas Rules of Evidence by providing corroboration of an alleged transaction with the decedent." *Russell*, 865 S.W.2d at 932. Rule 601(b) is a rule of evidence governing admission of statements made by the decedent. Failure to object to the statement waives the exclusionary provisions of the Dead Man's Statute. *Voigt v. Underwood*, 616 S.W.2d 266, 269 (Tex. Civ. App.—San Antonio 1981, writ ref'd n.r.e.). Because no objection to Lyles' testimony was made, we will not address the Rule 601(b) argument. TEX. R. EVID. 103(a)(1).

[4]Landers had previously executed a 1999 will leaving property to Lyles. His attorney testified, "[Landers'] intent throughout this was to be sure that [Lyles] was taken care of. He had had a very up-and-down relationship with his kids."

noted that the couple "had been living together for a long time." McRorey testified that Landers informed her that he was living with Lyles prior to the ceremonial marriage, and a 1999 letter addressed to Lyles was sent to the address of the home the couple shared.

### C. Holding Out

The statutory requirement of "represented to others" is synonymous with the judicial requirement of "holding out to the public," and may be established by conduct and actions of the parties. *Winfield*, 821 S.W.2d at 648 (spoken words are not necessary to establish representation as husband and wife).

Lyles stated she and Landers represented to the public that they were married by calling each other husband and wife as of 1993. "Everyone knew that we were together and had been together. We lived together. We shared everything. We paid bills together. We both worked together." A 2001 warranty deed, filed prior to the parties' ceremonial marriage in 2003 listed Landers as "a married person." Hurst also noted that Landers held himself out as married during his 2002 meeting with the couple.

### D. Contrary Evidence

David and McRorey argue that Landers and Lyles could not have entered into an agreement to be married, and did not represent to others that they were married, because *they* were not informed of the marriage relationship. Due to hard feelings developed from Landers' divorce from David's mother, David was estranged from Landers from 1988 until 2000 or 2001. He first

6

learned of Lyles in 2003, and claimed that his father only told him they were married at that time.[5] He believed his father was in a relationship with Rosie DeLeon in 2000 or 2001 "[b]ecause when he was in town he stayed with Ms. DeLeon. And every meeting I had with him she was present." McRorey was incarcerated on a drug possession conviction from 1998 until 2007. She met Lyles in 1997, prior to imprisonment. Both McRorey and her daughter, Courtney Saucedo, claimed that Landers introduced Lyles as his girlfriend and that neither was aware they had been married until sometime after the ceremonial marriage.

As to the element of cohabitation, Saucedo came to visit Landers in a farmhouse in 1996 when she was twelve years old and believed that Landers' former girlfriend, Karen Huskill, was living there at the time. Lyles testified that she lived with Landers in the farmhouse during the first year they lived together. Thereafter, they moved to another home. According to Lyles, Huskill was the former girlfriend of Landers and the "land was in Ms. Hukill's [sic] name but actually owned by Mr. Landers"; the farmhouse was conveyed to Landers by Huskill in 1994.

To support the theory that the parties were not cohabitating, McRorey also stated that Lyles "had her own place." Lyles did own a residence until it burned down in a fire in 1997. Although McRorey testified she believed Lyles was not living with her father, McRorey contradicted her testimony by later saying that her father said "[b]asically they lived together" during this time period.

### E. Analysis

---

[5]David also testified that he did not meet Lyles until 2005.

7

Viewing the evidence in a light most favorable to the trial court's fact finding, we conclude, based on Lyles and Landers' attorney's testimony and documentary evidence, that a reasonable and fair-minded fact-finder could conclude that Landers and Lyles were married in accordance with the common-law requirements as of July 12, 1993. The trial court, as fact-finder, was free to give less weight to David's, McRorey's, and Saucedo's testimony.

Again, they argued that Lyles could not prove that there was an agreement to be married and that the element of holding out to the public as married could not be met because the immediate family did not have knowledge of the marriage relationship. The court in *Giessel* rejected a similar argument presented by "cousins and their spouses" who were unaware that Giessel was living with Kuchera, found to be his common-law wife. 734 S.W.2d at 30, 32 (fact-finder was free to place less weight on testimony from Giessel's relatives that "Giessel never brought or talked about Kuchera on the several occasions that he attended family functions"). That the agreement to be married was unannounced to an estranged son, long-time incarcerated daughter, and twelve-year-old grandchild did not persuade the trial court that an agreement to marry did not exist. Given documentary evidence in the form of deeds listing Landers as married and testimony from Landers' attorney that the couple was married prior to the ceremonial marriage, the court was free to discount contrary testimony attempting to negate the elements of an agreement to be married and holding out to the public as married.

8

As to the issue of cohabitation, the trial court was free to believe Lyles' testimony.   While there was conflicting evidence on the issue, the trial court heard the witnesses testify and had the opportunity to judge their credibility and resolve the conflicting evidence.

Because we will not substitute our opinion for that of the trial judge, we cannot conclude that a finding that Landers and Lyles were common-law married as of July 12, 1993, was so contrary to the overwhelming weight and preponderance of the evidence that it was clearly wrong and manifestly unjust.   We find the evidence both legally and factually sufficient.

We affirm the judgment of the trial court.


                                                    Jack Carter
                                                    Justice


Date Submitted:        August 4, 2010
Date Decided:          September 1, 2010