

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00033-CV

_____

SALLY BROOKINS, Appellant

V.

JAMES DAVID COPPA, Appellee

On Appeal from the 196th Judicial District Court
Hunt County, Texas
Trial Court No. 75106

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

James David Coppa purchased a home from Sally Brookins for a total purchase price of $43,000.00. Brookins indicated "she would need $14,000 in order to pay off the first lien on the property held by" CitiFinancial prior to the sale. Coppa paid her a $14,000.00 down payment, believing that Brookins would pay off the first lien. He executed a deed of trust and real estate lien note for the remaining principal amount of $29,000.00 at zero percent interest, to be paid in monthly installments of $800.00. In return, Brookins provided a warranty deed with vendor's lien conveying the property in fee simple, which was recorded in the real property records.

Subsequently, Coppa learned that while Brookins accepted the $14,000.00, she failed to pay off the CitiFinancial lien. Thereafter, Coppa alleged Brookins began "dropping by at odd hours and requesting that Mr. Coppa pay 'rent' on the spot," "rifling through Mr. Coppa's mail; . . . requesting copies of the insurance policy on the property after Mr. Coppa had already provided the same; . . . harassing [Coppa's] roommates to the point that they moved out; turning off Mr. Coppa's gas utilities; and claiming that the Deed provided at the closing was 'fake' and threatening to take the property back from Mr. Coppa." Coppa filed suit for breach of contract, violation of the Deceptive Trade Practices Act, fraud in a real estate transaction, common law fraud, and negligent misrepresentation. He also sought, and was granted, an order allowing him to pay the monthly $800.00 obligation into the registry of the court. Following a trial to the bench, the trial court entered a final judgment in favor of Coppa allowing him to recover the $14,000.00 paid to Brookins along with post-judgment interest, costs of court, and attorney's fees.

2

The court also ordered the funds deposited in the court's registry, totaling $2,400.00, to be released back to Coppa.[1]

On appeal, Brookins complains[2] that the trial court erred in failing to admit certain documents and argues that the trial court's judgment awarding Coppa $14,000.00 was erroneous. Because we find that Brookins failed to preserve error regarding admission of certain documents, and that sufficient evidence supports the court's judgment, we affirm the judgment entered by the trial court.

## I. Brookins' Complaint Regarding Exclusion of Documents Was Not Preserved

The trial court allowed Brookins to testify and present evidence at trial. In her brief, Brookins claims that "I don't see how a Judge could just rule in [Coppa's] favor without even trying to look at my documents and paperwork." We interpret this as a complaint about the following exchange which occurred during Brookins' pro se cross-examination of Coppa:

Q. [By Brookins]: It wasn't 23. It was 43, with the agreement that you pay Citi Financial, once you paid that off.

A. No, ma'am.

Q. Yes, sir. And I have a letter up here from Mr. Steve Shipp, which I paid $3,000.00 to represent me, until some things went wrong. And it says—it's a—I told you at the time that Mr. –

---

[1] Brookins' brief does not challenge the portion of the judgment awarding attorney's fees, post-judgment interest, costs of court, or the relinquishment of $2,400.00 to Coppa, which could have been considered as a payment designed to apply to the fees assessed in the final judgment.

[2] Brookins' pro se brief also complains that "[s]omehow [Coppa] got the Judge to put my monthly payment into court registry." To the extent this statement can be interpreted as a complaint that the trial court erred in this ruling, we find that it was not raised to the trial court below. Therefore, this issue was not preserved for our review. *See* TEX. R. APP. P. 33.1.

MR. MILKS:   Your Honor, I'm going to object.

THE COURT:   All right.   It's hearsay.

MR. MILKS:   Introduce –

MS. BROOKINS:   This ain't hearsay.

THE COURT:   It's hearsay.   It's an out of court statement by the attorney.

MS. BROOKINS:   Huh?

THE COURT:   It's an out of court statement by the attorney.

MS. BROOKINS:   It's what?

THE COURT:   It's an out of court statement.   Go to the next question.
Do you have a question of the witness?

MS. BROOKINS:   So none of my papers –

THE COURT:   Do you have a question of the witness?

MS. BROOKINS:   No.

Brookins did not attempt to offer any documentary evidence after this point in the trial.   Even if we were to consider this exchange to constitute the offer of an exhibit, which we do not, and assume that the trial court excluded the attorney's letter, we could not reach Brookins' complaint. Error may not be predicated upon a ruling which excludes evidence unless a substantial right of the party is affected and the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked.   TEX. R. EVID. 103(a)(2); *Alexander Shren-Yee Cheng v. Zhaoya Wang*, 315 S.W.3d 668, 672–73 (Tex. App.—Dallas 2010,

no pet.); *In re N.R.C.*, 94 S.W.3d 799, 806 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). By failing to make an offer of proof, Brookins failed to preserve this issue for our review.

We overrule Brookins' first point of error.

## II.     Sufficient Evidence Supports the Trial Court's Judgment

### A.     Standard of Review

In conducting a legal sufficiency review, we view the evidence in a light most favorable to the judgment, and will indulge every reasonable inference that supports it to determine "whether the evidence at trial would enable [a] reasonable and fair-minded [judge] to reach the [finding] under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005); *Walker & Assoc. Surveying, Inc. v. Austin*, 301 S.W.3d 909, 916 n.4 (Tex. App.—Texarkana 2009, no pet.). We credit favorable evidence if a reasonable trial judge could, and disregard contrary evidence unless a reasonable judge could not. *Wilson*, 168 S.W.3d at 822, 827; *Austin*, 301 S.W.3d at 916 n.4.

In contrast, when conducting a factual sufficiency review, we consider all the evidence in the record, both supporting and conflicting, and will set aside the verdict only if it is so contrary to the overwhelming weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Walker*, 301 S.W.3d at 916 n.4; *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989) (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)). In an appeal from a bench trial, we do not invade the fact-finding role of the trial court, which alone determines the credibility of the witnesses, the weight to give their testimony, and whether to accept or reject all or any part of that testimony if the evidence falls within the zone of reasonable

disagreement. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580–81 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

**B.    Trial Testimony**

Brookins' brief complains that while Coppa "claims that the 14,000.00 that he paid was to pay the loan off at City [sic] Financial it is no where in writing that this was the case."

An important written document was the general warranty deed Brookins provided to Coppa which did not except or exclude a first lien on the property.   Coppa testified at trial, "I had offered—originally offered her $5,000.00 as a down payment and she had told me that she needed at least thirteen eight or 14,000 to pay the house off. . . . We determined that I would pay her $14,000.00 and she would pay off the mortgage on the loan."   He believed that the total purchase price for the house was $43,000.00, which was comprised of $14,000.00 to pay off the CitiFinancial lien, plus the $29,000.00 note.[3]   A receipt in evidence demonstrates Coppa tendered a payment of $7,000.00 to Brookins as "1/2 Down Payment."   The remaining balance owed to CitiFinancial was approximately "12,800 to 13,200, somewhere."   The evidence contained a disclosure statement note and security agreement from CitiFinancial demonstrating that the balance owed was $13,390.15 one year prior to the sale of the home and that the monthly payments

---

[3]At the time of trial, Coppa had paid Brookins $9,600.00 under the terms of the note, and an additional $2,400.00 had been paid into the registry of the court.

6

which were made by Brookins totaled $158.47. Coppa claimed he would have to pay the balance on the CitiFinancial loan to prevent foreclosure of the property.[4]

Brookins testified that she accepted the $14,000.00 from Coppa as a down payment so that she could find another place to live and pay off different debts. Brookins was given the opportunity to speak to the court, but relayed no other substantive information.

Viewing the evidence in a light most favorable to the judgment, the trial court, as fact-finder, could have believed Coppa's testimony that he agreed to pay $14,000.00 to Brookins as a down payment on the home in consideration for her agreement to use the money to pay off the first lien held by CitiFinancial. The general warranty deed executed by Brookins warranted that there was no other lien on the property (in other words that, out of closing, the first lien would be paid off). Brookins' contrary testimony amounted to claims denying any representation that she would pay off the first lien and an averment that she told Coppa she needed the money to find a new place to live and pay off other debts. The trial court resolved any factual dispute. Because the trial court found that the down payment was to be used to pay the first lien, which Brookins did not do, we cannot say that the return of the down payment to Coppa (presumably to pay off the first

---

[4]Coppa also testified that Brookins (1) sent him a foreclosure notice for "[f]ailure to show proof of insurance," although he had provided such proof earlier; (2) had shut off his gas utility by calling the gas provider and reporting an emergency gas leak; (3) averred to the gas company that she was the owner of the property and that Coppa was a renter in default; (4) forced two subtenants paying Coppa rent at a rate of $450.00 to move out early by "coming by and knocking on the door, asking for money and completely badgering them"; and (5) failed to pay her portion of the property taxes ($190.66 for the months when Brookins occupied the property) for the year in which the property was purchased. Coppa claimed that while the total purchase price for the home was $43,000.00, he had "suffered total economic damages in the amount of $44,590.66," comprised of the $14,000.00 down payment, $9,600.00 which had been paid to Brookins, $2,400.00 into the court's registry, $190.66 in property taxes, $5,400.00 in lost rent for the subtenants who were forced to move out, and $13,000.00 for the balance on the CitiFinancial lien.

7

lien) was so contrary to the overwhelming weight and preponderance of the evidence that it was clearly wrong and manifestly unjust. Because we find the evidence legally and factually sufficient to support the judgment of the trial court finding that Brookins breached a contract to apply the down payment to the first lien, the trial court judgment in returning the $14,000.00 to Coppa was not erroneous.

We overrule Brookins' last point of error.

## III. Conclusion

We affirm the trial court's judgment.

Jack Carter
Justice

Date Submitted: July 6, 2011
Date Decided: July 29, 2011

8